[Cite as *Tyler v. Tyler*, 2016-Ohio-7419.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | |
|---|---|
| ANI T. TYLER | : |
| | : Appellate Case No. 26875 |
| Petitioner-Appellant | : |
| | : Trial Court Case No. 15-DV-85 |
| v. | : |
| | : (Domestic Relations Appeal from |
| GREGORY TYLER | : Common Pleas Court) |
| | : |
| Respondent-Appellee | : |
| | : |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of October, 2016.

. . . . . . . . . . .

RICHARD A.F. LIPOWICZ, Atty. Reg. No. 0018241, 130 West Second Street, Suite 1900, Dayton, Ohio 45402
     Attorney for Petitioner-Appellant

JON PAUL RION, Atty. Reg. No. 0067020, and NICOLE RUTTER-HIRTH, Atty. Reg. No. 0081004, Rion, Rion & Rion, L.P.A., Inc., 130 West Second Street, Suite 2150, Post Office Box 10126, Dayton, Ohio 45402
     Attorneys for Respondent-Appellee

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Petitioner-appellant Ani Tsai Tyler appeals from a judgment of the Montgomery County Domestic Relations Court awarding her a civil protection order against respondent-appellee Gregory Tyler, but omitting her minor children from its scope.

{¶ 2} We conclude that the trial court's finding that the children are not in need of protection under the order is not against the manifest weight of the evidence. However, the trial court erred in ruling upon Ms. Tyler's objections to the magistrate's decision by considering evidence outside the record. Accordingly, that part of the judgment of the trial court declining to extend the scope of the protection order to the children is Reversed, and this cause is Remanded for further proceedings consistent with this opinion. The portion of the trial court's judgment including Ani Tsai Tyler within the scope of the protection order is Affirmed.

## I. The Course of Proceedings

{¶ 3} Ms. Tyler and Mr. Tyler were married in 2006, and have two minor children. The parties initiated divorce proceedings. Ms. Tyler filed a Petition for Domestic Violence Protection Order, pursuant to R.C. 3113.31, in January 2015, seeking an order of protection for herself and the minor children. An ex parte order of protection was entered, and a hearing was scheduled.

{¶ 4} Due to continuances, the hearing was conducted in April 2015. Ms. Tyler testified on her own behalf. She testified that Mr. Tyler had hit her on the face several times. She also testified that he had spanked the parties' son to the point that she covered the child with her own body. Ms. Tyler testified that she was in the yard one day, when her daughter came out with a hand-print on her face. She testified that her husband was home at the time. She also stated that her husband hit the son in the face. There was no specific time frame for these incidents given in the testimony. However, from the record, it appears that all of these incidents occurred in 2013.

{¶ 5} Ms. Tyler also testified that in June 2013, Mr. Tyler became enraged and broke all the lights in the house. Ms. Tyler took the children and left the home. Mr. Tyler called the police, and he was taken to Kettering Behavioral Health Center. He was released a day later, and he purchased a gun and ammunition. Ms. Tyler testified that these actions concerned her, and she asked Mr. Tyler to move out, which he did. She testified that he left the gun at the home, and she sold it back to the store from which he had made the purchase.

{¶ 6} Ms. Tyler testified that the parties discussed divorcing, but that in November 2013, Mr. Tyler moved back into the family home. Ms. Tyler testified that he left again, and that Mr. Tyler had not been in the marital home since June 2014, and has not visited with the children since October 2014. According to the record, he resides in Maryland.

{¶ 7} Ms. Tyler testified that on January 15, 2015, she helped the parties' son call Mr. Tyler in order to invite him home for the son's birthday. She admitted that she did not hear what Mr. Tyler said to the child, but that the child acted afraid after speaking to his father. She testified that the child finally told her that Mr. Tyler had said he would "get you all after the divorce." Ms. Tyler took this statement as a threat, which led her to file the petition that is the subject of this appeal.

{¶ 8} Mr. Tyler did not testify. Following the hearing, the magistrate issued an order of protection for Ms. Tyler, but found no evidence to support granting an order to protect the children. Ms. Tyler filed objections, in which she argued that the magistrate erred by failing to consider Mr. Tyler's refusal to testify, and by failing to include the children in the order of protection. The trial court overruled the objections, and adopted the decision of the magistrate as the judgment of the court.

{¶ 9} Ms. Tyler appeals.

## II. The Record Does Not Support Ms. Tyler's Contention that Mr. Tyler, Who Was Not Called to Testify by Either Party, Refused to Testyify on Fifth Amendment Grounds

{¶ 10} We begin with Ms. Tyler's Second Assignment of Error:

THE TRIAL COURT ERRED BY HOLDING THAT NO NEGATIVE INFERENCE COULD BE DRAWN FROM RESPONDENT'S REFUSAL TO TESTIFY.

{¶ 11} Ms. Tyler contends that the magistrate erred by making no mention of the fact that Mr. Tyler refused to testify at the hearing after asserting his Fifth Amendment rights. She further complains that the trial court erred by holding that the Fifth Amendment "gives any party the right not to testify," and finding that the magistrate did not err in failing to consider Mr. Tyler's refusal to testify in a negative light.

{¶ 12} Nowhere in the record did Mr. Tyler assert any rights under the Fifth Amendment. Ms. Tyler claims that, prior to the hearing, Mr. Tyler indicated that he would assert his Fifth Amendment rights. However, we find no pleading or statement in the transcript to support this claim.

{¶ 13} She also claims that he asserted his Fifth Amendment rights during the hearing. We disagree. At the close of Ms. Tyler's evidence, when the magistrate asked whether Mr. Tyler intended to testify, counsel for Mr. Tyler merely indicated that he was not going to testify. No mention was made regarding an assertion of his Fifth Amendment rights. It was Ms. Tyler's counsel who then asserted that he should be

permitted to proffer all of his questions, and that Mr. Tyler could assert his Fifth Amendment rights to each question.   The trial court then recessed, and held a discussion off the record.   Thereafter, Ms. Tyler's counsel stated that he did not wish to call Mr. Tyler to the stand, and raised no objection on the record regarding the issue.

{¶ 14} Ms. Tyler asserts in her appellate brief that the parties discussed Mr. Tyler's Fifth Amendment rights off the record.   But, we cannot consider what happened off the record.   We conclude that the record before us does not establish that Mr. Tyler exercised his Fifth Amendment right not to testify; the record reflects simply that he was not called as a witness by either party.

{¶ 15} The Second Assignment of Error is overruled.


### III. The Trial Court's Order Is Not Against the
### Manifest Weight of the Evidence

{¶ 16} Ms. Tyler's First, Third and Fourth Assignments of Error state as follows:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT GRANTED AN ORDER OF PROTECTION TO PETITIONER BUT NOT HER CHILDREN.

THE TRIAL COURT'S DECISION GRANTING A CPO TO PETITIONER BUT NOT HER CHILDREN IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.


THE TRIAL COURT ERRED WHEN IT FOUND THAT RESPONDENT'S ACTS OF DOMESTIC VIOLENCE TOWARD THE

CHILDREN WERE REASONABLE CORPORAL PUNISHMENT.

{¶ 17} Ms. Tyler contends that the court, based upon the evidence, should have granted an order of protection for the parties' children.

{¶ 18} In order to obtain a civil protection order, a petitioner must demonstrate by a preponderance of the evidence that the persons seeking protection are in danger of domestic violence. *Felton v. Felton*, 79 Ohio St.3d 34, 679 N.E.2d 672 (1997), paragraph two of the syllabus. "The statutory criterion to determine whether or not to grant a civil protection order pursuant to R.C. 3113.31 is the existence or threatened existence of domestic violence." *Thomas v. Thomas*, 44 Ohio App.3d 6, 8, 540 N.E.2d 745 (10th Dist. 1988).

{¶ 19} "Domestic violence" means, with respect to a family or household member, (1) attempting to cause or recklessy causing bodily injury, (2) placing another person, by the threat of force, in fear of imminent serious physical harm, or committing either menacing by stalking or aggravated trespass, (3) abusing a child, or (4) committing a sexually oriented offense. R.C. 3113.31(A)(1).

{¶ 20} While no part of the statute refers to the examination of past acts of domestic violence in present cases, courts have held that it is permissible in certain circumstances for a court to consider past behaviors when determining whether there is a present threat of domestic violence. *Eichenberger v. Eichenberger*, 82 Ohio App.3d 809, 816, 613 N.E.2d 678 (10th Dist. 1992). That is because in a situation where the alleged offending act is one that places the assumed victim in fear of harm, "[t]he fear * * * and the reasonableness of that fear could and should be determined with reference to [a petitioner's] history with [the respondent]." *Id.*

{¶ 21} We have held that "imminence" does not require an offender to carry out a threat immediately, or be in the process of carrying it out. *Strong v. Bauman*, 2d Dist. Montgomery Nos. 17256, 17414, 1999 WL 317432, *4 (May 21, 1999). Because civil protection orders are intended to prevent violence before it happens, "the critical inquiry under the statute is whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent), serious physical harm. This inquiry necessarily involves both subjective and objective elements. * * * Therefore, we must determine whether [the petitioner] * * * had a reasonable belief that * * * [the offender] would cause her imminent, serious physical harm." *Id.*

{¶ 22} Ms. Tyler filed the petition for protection following the perceived threat made by Mr. Tyler to the parties' child during a telephone conversation. He was not living in the house, and had not seen the children for several months. The record does not support a finding that any violence occurred in the recent past leading up to filing the petition. Indeed, all of the acts, other than the phone call, to which she testified appear to have occurred in 2013. The magistrate and the trial court noted those past acts in finding that Ms. Tyler was in fear of serious physical harm.[1]

{¶ 23} The question then, is whether this evidence constitutes evidence sufficient to include the children in the order. Ms. Tyler did not make any claims that Mr. Tyler committed any acts of violence against the children in her petition, or during the hearing on the ex parte petition. We do not disagree with the magistrate and the trial court that

---

[1] The alleged threat made by Mr. Tyler, that he would "get them all" after the divorce, could be interpreted to mean that he would get custody of the children, which Ms. Tyler acknowledged Mr. Tyler was seeking. Apparently, the trial court accepted Ms. Tyler's claim that she believed the statement implied that Mr. Tyler would harm her and the children, since it granted the protection order as to her.

the record does not support a finding that Mr. Tyler committed acts of domestic violence against the children. The trial court found that Ms. Tyler's testimony regarding her claims that Mr. Tyler slapped the daughter and hit the son in the face did not indicate any personal knowledge of those claimed events.

{¶ 24} While Ms. Tyler also indicates that Mr. Tyler spanked the son, and that Ms. Tyler felt the need to protect him from the spankings, she also testified that spanking is not tolerated in her cultural background. There is no evidence that the son suffered serious physical harm when he was spanked; and there is no competent evidence demonstrating an excessive frequency or severity of spankings. Thus, we conclude that the trial court's finding that the spankings constituted reasonable corporal punishment, rather than domestic violence, is not against the manifest weight of the evidence.

{¶ 25} Based upon this record, we conclude that the trial court's decision not to include the children within the scope of the protective order is not against the manifest weight of the evidence.

{¶ 26} The First, Third, and Fourth Assignments of Error are overruled.

**IV. The Trial Court Erred in Considering Facts Not in Evidence**

{¶ 27} Ms. Tyler's Fifth Assignment of Error provides as follows:

THE TRIAL COURT ERRED WHEN IT WENT OUTSIDE THE RECORD OF THE PARTIES' DOMESTIC VIOLENCE CASE TO FIND EVIDENCE TO SUPPORT ITS DECISION.

{¶ 28} Ms. Tyler contends that the trial court erred when it noted, in its decision adopting the decision of the magistrate, that the parties had entered into an agreed order

granting Mr. Tyler unsupervised parenting time with the children in their divorce action. Ms. Tyler notes that this agreement was entered into in June 2015, after the final hearing in this action, and that it necessarily involves matters not in the record in this action. She also asserts that the trial court later amended the order to provide for supervised visitation, but this fact, also, is not in our record, so we do not consider it.

{¶ 29} We agree that the trial court erred in considering evidence outside the record. Had the trial court intended to take judicial notice of matters in the divorce action, it should have given notice to the parties, and given the parties an opportunity to respond. Despite the fact that the decision of the trial court is supported by the evidence in the record, there is also evidence upon which the trial court could have relied in reaching a different conclusion. Thus, we cannot conclude that the trial court's consideration of facts not in the record is harmless error.

{¶ 30} The Fifth Assignment of Error is sustained.

## V. Conclusion

{¶ 31} Ms. Tyler's Fifth assignment of error having been sustained, that part of the judgment of the trial court declining to extend the scope of the protection order to the children is Reversed, and this cause is Remanded for further proceedings consistent with this opinion. The portion of the trial court's judgment including Ani Tsai Tyler within the scope of the protection order is Affirmed.

. . . . . . . . . . . . .

FROELICH and HALL, JJ., concur.

Copies mailed to:

Richard A.F. Lipowicz
Jon Paul Rion
Nicole Rutter-Hirth
Hon. Denise L. Cross